UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


ARSHAD SPANN, BY AND THROUGH
HIS NATURAL MOTHER AND NEXT FRIEND,
PERSEPHINEY HOPKINS, AND PERSEPHINEY
HOPKINS, INDIVIDUALLY                                    PLAINTIFFS

VS.                          CIVIL ACTION NO. 3:07CV207TSL-JCS

WORD OF FAITH CHRISTIAN CENTER CHURCH,
JANE DOES A-G, JOHN DOES A-G, AND
CORPORATIONS A-G                                        DEFENDANTS


MEMORANDUM OPINION AND ORDER

    This cause is before the court on the motion of defendant

Word of Faith Christian Center Church for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff Persephiney Hopkins, individually and as mother and next

friend of Arshad Spann, has responded to the motion and has filed

a cross-motion for partial summary judgment.  The motions have

been fully briefed by the parties, and the court, for the reasons

that follow, concludes that defendant's motion should be granted

in part and denied in part, and that plaintiff's motion should be

denied.

    From the time he was fifteen months old until age four,

plaintiff Arshad Spann, the minor son of plaintiff Persephiney

Hopkins, was enrolled in the daycare/preschool at Word of Faith

Christian Center Church.[1]  When he was three years old, Arshad was diagnosed as developmentally delayed, and shortly before he turned four, Arshad was diagnosed as autistic.  At some point following his diagnosis with autism, defendant informed Hopkins that the school and its teachers were not qualified, trained or equipped to educate Arshad and that he therefore would not be allowed to re-enroll Arshad for the following school year.  Plaintiff Hopkins soon withdrew Arshad from the Word of Faith preschool, and after a short placement during the summer 2006 at another private school, Ms. Hopkins enrolled Arshad in the preschool program at Clinton Park Elementary School, a public elementary school serving the Clinton Public School District.

In April 2007, Ms. Hopkins, individually and on behalf of Arshad, brought this action against defendant Word of Faith Christian Center Church, asserting claims under federal and state law, based on allegations that defendant's preschool under 29 U.S.C.A. § 794, intentionally discriminated against Arshad because of his disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794; that defendant failed to provide, or to ensure Arshad was provided, appropriate special education services, in violation of the Individuals with Disabilities

---

[1]     Defendant refers to the daycare/preschool as Word of Faith Academy.

Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*; that defendant breached its contract with her by failing to uphold its assurances and promises that the school and its instructors were equipped, trained and qualified to educate Arshad with his disability; and that by all these actions, defendant has intentionally and/or negligently inflicted emotional distress upon plaintiff.

Defendant moved first for summary judgment on all of plaintiffs' claims, following which plaintiff filed her own motion for partial summary judgment on their claim based on the Rehabilitation Act and their claim for breach of contract. The court considers the motion as to plaintiff's claims seriatim.

Americans With Disabilities Act (ADA)

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the ... accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[2] Places of public

---

[2]    The ADA consists of three titles addressing discrimination against the disabled in different contexts. "Title I prohibits employment discrimination, 42 U.S.C. § 12112, Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184." Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). It is apparent here that Title III is the only potentially applicable section, as plaintiff does not claim that defendant discriminated against Arshad in employment or that defendant is a public entity. See Woods v. Wills, 400 F. Supp. 2d 1145, 1161 (E.D. Mo. 2005).

3

accommodation under the ADA are "defined in terms of 12 extensive categories," <u>PGA Tour, Inc. v. Martin</u>, 532 U.S. 661, 676, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001), and includes places of education, <u>see</u> 42 U.S.C. § 12181(7)(J). However, 42 U.S.C. §12187 states:

> The provisions of the subchapter [III] shall not apply to private clubs or establishments exempted from coverage under title II of the Civil Rights Act of 1964 (42 U.S.C. 2000-a(e)) [42 U.S.C.A. § 2000a *et seq.*] or to religious organizations or entities controlled by religious organizations, including places of worship.

Defendant has moved for summary judgment on the ground that it is exempt from coverage under Title III of the ADA as a religious private school that is controlled by a religious organization, Word of Faith Christian Center Church.

Plaintiff seeks to avoid summary judgment on this claim, arguing that because defendant failed to plead the exemption as an affirmative defense, it has waived the defense. <u>See</u> Fed. R. Civ. Proc. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. . . ."). Defendant responds that it was not required to affirmatively plead that it is a religious institution "because religious institution status is not a defense, but a statutorily granted exemption." Contrary to defendant's position, the courts have consistently held that statutory exemptions, particularly from remedial statutes, must be pled as affirmative defenses. <u>See</u> <u>Oden v. Oktibbeha County, Miss.</u>, 246 F.3d 458, 467 (5th Cir. 2001) (holding

4

that defendants waived defense of "personal staff" exception to Title VII by failing to plead same); Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1279-1280 (10th Cir. 1998)(holding that "[a] claim of exemption is an affirmative defense, which must be specifically pleaded."); Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1013 (11th Cir. 1982) (recognizing that cases "have generally treated statutory exceptions from remedial statutes as affirmative defenses"); Schwind v. EW & Assoc., Inc., 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) (defense of exemption under a remedial statute must be specifically pled or will be waived); see also Vore v. Colonial Manor Nursing Center, No. 3-03-CV-1660-BD(P), 2004 WL 2348229, at 3 (N.D. Tex. Oct. 19, 2004) (recognizing that "[c]onsistent with the remedial purposes of the ADA, a charge of employment discrimination must be construed with the 'utmost liberality'").

Defendant did not plead the religious organization exemption as an affirmative defense to plaintiff's ADA claim. However, a defendant's "failure to plead an affirmative defense will not always result in waiver, particularly where the responding party has an opportunity to respond to the affirmative defense and no prejudice results." Passa v. City of Columbus, No. 2:03-CV-81, 2007 WL 3125130, 5 (S.D. Ohio Oct. 24, 2007). In this vein, the Fifth Circuit has stated,

> While it is true that failure to abide by Rule 8(c) leads to waiver, there is some play in the joints. A defendant must "plead an affirmative defense with enough

5

> specificity or factual particularity to give the
> plaintiff 'fair notice' of the defense that is being
> advanced."  The concern is that "[a] defendant should
> not be permitted to 'lie behind a log' and ambush a
> plaintiff with an unexpected defense."  "Where the
> [affirmative defense] is raised in the trial court in a
> manner that does not result in unfair surprise, however,
> technical failure to comply precisely with Rule 8(c) is
> not fatal."  "More specifically, a defendant does not
> waive an affirmative defense if it is raised at a
> 'pragmatically sufficient time, and [the plaintiff] was
> not prejudiced in its ability to respond.'"

Rogers v. McDorman, 521 F.3d 381, 385-386 (5th Cir. 2008) (internal

citations omitted).  In the case at bar, while plaintiff points

out that defendant first specifically raised this defense in its

motion for summary judgment, plaintiff does not claim, nor could

he reasonably claim to be surprised that defendant would claim

that it is exempt as a private entity that is controlled by a

religious organization.  The defense cannot have been unexpected,

particularly given that plaintiff brought this action against the

Word of Faith Christian Center *Church.*

    Plaintiff asks that should the court conclude that defendant

has not waived the exemption defense, the court should allow

additional time for discovery related to the question whether

defendant in fact qualifies for the exemption, pointing out that

the question whether a school qualifies for the religious

exemption is a "mixed question of law and fact."  See Doe v.

Abington Friends School, 480 F.3d 252 (3d Cir. 2007).  However,

plaintiff has suggested nothing that discovery could possibly

reveal which might undermine defendant's claim that the exemption

applies.  Plaintiff herself has sued the Word of Faith Christian

Center Church, which she alleges operates the subject daycare/preschool.  See Woods v. Wills, 400 F. Supp. 2d 1145, 1161–1162 (E.D. Mo. 2005) (holding that "if a church itself operates a day care center, a nursing home, a private school, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part").[3]  Accordingly, plaintiff's ADA claim will be dismissed.

The Rehabilitation Act

Plaintiff has sued defendant under Section 504 of the Rehabilitation Act based on defendant's refusal to re-enroll Arshad for the succeeding school year once it learned that Arshad had been diagnosed with autism.  She contends the refusal to accommodate Arshad's autism constituted discrimination in violation of the Rehabilitation Act.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a),

_____

[3]     The court notes that whether intentionally or by oversight, plaintiff has not sued the preschool itself, i.e., Word of Faith Academy, but rather has sued the Word of Faith Christian Center Church, presumably because it owns and operates the preschool.  Plaintiff does not address this fact in her memoranda.  For its part, defendant has presented evidence that the daycare/preschool was founded by the leader of Word of Faith Christian Center Church, Bishop Kevin E. Wright, and is located on church property.  The school's "mission statement" recites that it was created because:
       1) "Christian schools extend the values taught in the Christian home environment;"
       2) "Christian schools prevent premature exposure to Godless lifestyles and viewpoints;" and
       3) "Christian schools model servant-leadership as an extension of faith."

states:

> No otherwise qualified individual with a disability in
> the United States . . . shall, solely by reason of her
> or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving
> Federal financial assistance. . . .

"Program or activity" is defined to include the operations of a
private organization "which is principally engaged in the business
of providing education . . . ."  Id.

To elements of a claim under the Rehabilitation Act which the
plaintiff must prove are that "(1) the plaintiff is an individual
with a disability under the Rehabilitation Act; (2) the plaintiff
is otherwise qualified for participation in the program; (3) the
plaintiff is being excluded from participation in, being denied
the benefits of, or being subjected to discrimination under the
program solely by reason of his or her disability; and (4) the
relevant program or activity is receiving federal financial
assistance."  M.M. v. School Bd. of Lee County, Fla., No.
2:05-cv-7-FtM-29SPC, 2008 WL 4181212, 5 (M.D. Fla. Sept. 3, 2008)
(citing 1 *Americans with Disabilities: Practice and Compliance
Manual* § 1:3 (May, 2007)).  Defendant's motion focuses on the
requirement that plaintiff establish that the program or activity
receives federal financial assistance.  Defendant maintains that
it does not receive federal financial assistance and therefore, is
not covered by the Act and is entitled to summary judgment.
Plaintiff contends otherwise.

Plaintiff alleges that at the time defendant made the decision that it would not re-enroll Arshad, it was receiving federal funds by virtue of the fact that Arshad's tuition at Word of Faith Academy was paid, in part, by a child care certificate issued pursuant to a federally-funded subsidy program. Defendant has moved for summary judgment, insisting that it receives no federal funds and hence is not subject to the requirements of the Rehabilitation Act. Defendant points out that the child care certificate program pursuant to which plaintiff received assistance with child care payments, though partially federally funded, is administered by the state for the benefit of low-income families; it contends the recipient of federal funds is thus the state, or ultimately, the family which receives the assistance.

The program through which Ms. Hopkins received assistance is the Child Care Certificate Program, which is run by the Mississippi Department of Human Services (MDHS) Office for Children and Youth (OCY). The program provides financial assistance to eligible low-income parents for quality childcare. As defendant notes, the Child Care Certificate Program, while administered through OCY, is funded primarily by the Child Care and Development Fund (CCDF), the largest source of federal child care subsidy funding for low-income families. The Child Care and Development Fund (CCDF), established under the Child Care and Development Block Grant Act, 45 C.F.R. §§ 98.1-98.102 (2007), provides states with a block grant to subsidize child care for

parents whose income is less than eighty-five percent of the state's median income.  "The purpose of the CCDF is to increase the availability, affordability, and quality of child care services."  45 C.F.R. at 98.1(b).  Among other reasons, the fund provides states money to help "enhance the quality . . . of child care for all families. . . ."

Most CCDF monies are distributed directly to the parents of eligible children in the way of vouchers.  That is how the program is structured in Mississippi:  OCY gives parents a certificate (voucher) to be used to pay part of the cost of child care at a provider of their choice.  While federal funds are used for this program, the program is wholly administered by the State of Mississippi.

There is no question but that Word of Faith Academy did receive federal funds indirectly in the form of vouchers or certificates which paid a portion of Arshad's tuition payments.[4] An entity that does not receive federal financial assistance directly may nevertheless be covered by the Rehabilitation Act if it receives federal financial assistance indirectly.  Dunlap v. Association of Bay Area Governments, 996 F. Supp. 962, 968 (N.D. Cal. 1998) (citing Herman v. United B'hood of Carpenters, 60 F.3d 1375, 1381 (9th Cir. 1995)); see also Bentley v. Cleveland Co. Bd.

---

[4]     Defendant knew it was receiving federal funds, and does not contend otherwise.  Defendant executed an agreement assenting to its participation in the Child Care Certificate Program, which recited that participation was conditioned on the "[a]vailiability of federal funds."

of Co. Com'rs, 41 F.3d 600, 603-04 (10th Cir. 1994) (assistance may be directly from the federal government or indirectly, as when money is funneled through state programs).  However, that an entity merely indirectly "benefits" from federal aid, or is "inextricably intertwined" with the actual recipient, is not sufficient to support coverage of the Act.  Dunlap, 996 F. Supp. at 968 (citing United States Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 607-10, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986)).  See also National Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 460-461, 119 S. Ct. 924, 925-926, 142 L. Ed. 2d 929 (1999) (observing that § 504 discrimination based on disability in substantially the same terms that Title IX uses to prohibit sex discrimination, and holding that "[e]ntities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not.");

Here, the parties are at odds over whether Word of Faith was merely enjoying indirectly the benefits of federal assistance to plaintiff, in which case it did not receive federal financial assistance within the meaning of the Rehabilitation Act, or whether defendant is itself an intended recipient of the subject federal funds, in which case it is a recipient of federal funds and therefore subject to the requirements of the Act.

In Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448 (5th Cir. 2005), the Fifth Circuit was called upon to decide whether Louisiana Tech University was a "program or activity receiving federal financial assistance" within the meaning of § 504.  In Bennett-Nelson, it was undisputed that students enrolled in the University "receive[d] federal funds earmarked for educational expenses" through both a Federal Work Study program, under which the "federal government ... provide[s] the university a fund of federal money that must be matched by university money [,] which is then used [to pay] student workers," and via the Pell Grant program, under which the federal government "writes a check ... directly to Louisiana Tech University," and funds are "funneled through" the University "for distribution to the student" to use for their educational expenses at the University, such as tuition, room and board, and meals.  Louisiana Tech maintained that since it was the students that ultimately received the federal funds, the University was not a recipient of federal aid within the meaning of § 504.  The court, however, based on the Supreme Court's holdings in Grove City College v. Bell, 465 U.S. 555, 104 S. Ct. 1211, 79 L. Ed. 2d 516 (1984), and United States Department of Transportation v. Paralyzed Veterans of America, 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986), concluded otherwise.

The court in Bennett-Nelson described the holdings in these two cases, stating,

In <u>Grove City College v. Bell</u>, 465 U.S. 555, 104 S. Ct. 1211, 79 L. Ed. 2d 516 (1984), the Supreme Court held that the petitioner, a private college, was a recipient of federal funds within the meaning of § 901(a) of Title IX, which prohibits sex discrimination in "any education program or activity receiving Federal financial assistance." In so holding, the Court observed that, although the college received no direct federal aid, "the language of § 901(a) contains no hint that Congress perceived a difference between direct institutional assistance and aid received by a school through its students." 465 U.S. at 564, 104 S. Ct. 1211. The Court further observed that "the economic effect of direct and indirect assistance often is indistinguishable", particularly insofar as federal aid "effectively supplements [a college's] own financial aid program". <u>Id</u>. at 565, 104 S. Ct. 1211.

Subsequently, in <u>Paralyzed Veterans of America</u>, the Court held that, although airlines benefitted from federal financial assistance given to airport operators, they were not recipients of federal aid under § 504. <u>See</u> 477 U.S. 597, 106 S. Ct. 2705, 91 L. Ed. 2d 494. The Court distinguished <u>Grove City</u> by noting that, in that case, "it was clear ... that Congress' intended recipient was the college, not the individual students to whom the checks were sent from the Government". <u>Id</u>. at 606-07, 106 S. Ct. 2705. By contrast, in <u>Paralyzed Veterans of America</u>, the airport operators were the intended recipients and the airlines merely beneficiaries.

431 F.3d 452-53. The Fifth Circuit concluded that consistent with the Supreme Court's ruling in these cases, "the relevant question is not whether the University passes federal funds through to students–who, it should be noted, typically pass them back to the University in the form of tuition payments and other expenses–but whether the University is an 'intended recipient' of the funds Congress has appropriated." <u>Id</u>. at 452. The court determined that Louisiana Tech was such an "intended recipient," explaining,

In this case, just as in <u>Grove City</u>, Congress has expressly stated that one purpose of the relevant

> student aid provisions is "to assist in making available
> the benefits of postsecondary education to eligible
> students ... by ... providing *assistance to institutions*
> *of higher education*". 20 U.S.C. § 1070(a)(5) (emphasis
> added); <u>see also</u> 465 U.S. at 566, 104 S. Ct. 1211.
> Moreover, the practical effect of the federal assistance
> in this case is precisely the same: it serves to
> supplement the University's financial aid, thereby
> enhancing the University's ability to enroll and educate
> financially needy students.

<u>Id</u>. at 453.

In the case at bar, defendant argues that since the federal

Child Care Development Fund gives its federal funds not to any

school or school program, but to the state-run Child Care

Certificate Program, which in turn, distributes the funds to

private individuals to use at the provider of their choice, then

the recipient under Section 504 is the state program.  In the

court's opinion, however, while the state of Mississippi may be a

recipient of the funds, the state is not the ultimate recipient,

but rather serves as a conduit for funds that are intended to be

disbursed to eligible families in need of assistance to pay for

child care, which are in turn earmarked for payment to the child

care provider.  Moreover, the child care provider does not merely

benefit economically from the financial assistance provided the

families, but in the court's opinion, is an intended recipient

itself, particularly considering that a purpose of the CCDF is to

improve the quantity and quality of child care available to low

income families.  The court, therefore, concludes that defendant's

motion for summary judgment on this claim, which motion is based

solely on its contention that Word of Faith is not a recipient of

federal funds, must be denied.  See <u>Besson v. City of Creal</u> <u>Springs</u>, 2006 WL 2374870, 1 (S.D. Ill. 2006) (denying summary judgment to defendant where plaintiff presented evidence that defendant received Community Development Assistance Program grants in recent years from the state of Illinois but which were funded, at least in part, by the federal government, because "this type of indirect receipt of funds is sufficient to qualify as 'federal financial assistance' under the Rehabilitation Act).

Plaintiff has herself moved for summary judgment on her claim under the Rehabilitation Act, contending she has established each of the elements of the claim.  Defendant's response, like its own motion, focuses entirely on defendant's argument that Word of Faith does not receive federal funds.  The court, however, notwithstanding defendant's failure to address the other elements of this claim, is not persuaded that plaintiff has demonstrated entitlement to summary judgment.  In particular, while plaintiff has shown that Arshad is an individual with a disability under the Act, she has not established as a matter of law that he is qualified for the benefit sought and was discriminated against solely by reason of his disability.[5]

---

[5]    It is not entirely clear whether plaintiff's claim is that defendant violated the Rehabilitation Act by discriminating against him while he was enrolled in its program, or instead, by refusing to re-enroll him for the succeeding school year once it learned of his diagnosis with autism.  If the latter, the court notes there is no proof that Word of Faith received federal funds through any source other than these plaintiffs; there is no proof that other students participated in the subject Child Care Certificate Program.  Moreover, neither party has suggested that

IDEA

Although plaintiff has voluntarily dismissed her IDEA claim, an understanding of the IDEA is nevertheless relevant to other claims.  The IDEA authorizes federal funding for state and local educational agencies to provide for the educational needs of disabled children.  Every state educational agency (SEA) or local educational agency (LEA) which receives funding under the IDEA must provide disabled children with a "free appropriate public education."  (FAPE).  See 20 U.S.C. § 1412(a)(1)(2003).  The Act guarantees that such an education is given by instructing states to create an Individualized Education Plan (IEP) for each child within its care.  Responsibility for compliance with the Act falls on the SAE and ultimately, the LAE.  The school district where the private school is located is responsible for conducting an evaluation and determination of eligibility for special education services.

For children who are not in the public school system, the IDEA has established a "child-find" process, pursuant to which each LEA must meet with private school representatives and conduct a thorough child-find process to determine the number of parentally-placed children with disabilities attending private schools in each LEA.  See 20 U.S.C. § 1412(a)(3)(A)(child-find

---

solely because defendant accepted federal funds from these plaintiffs for a period of time defendant was thus bound to continue to accept such funds or to continue to provide services to Arshad indefinitely.

requirement); 20 U.S.C. § 1412(a)(10)(A)(ii)(I) (child-find applies to children in private schools).

As defendants note, while the LEA is obligated to spend a certain percentage of funds to provide services parentally-placed children with disabilities in private schools, see 20 U.S.C. § 1412 (a)(10)(A)(I), these children, unlike their public-school counterparts, do not have the same right to special education services and programs and are not entitled to a FAPE.  See 20 U.S.C. § 1412 (a)(10)(C)(I).  However, privately enrolled students found eligible for a FAPE under IDEA, have the option of enrolling in a public elementary school to take advantage of and have full access to all the special education services and programs.  If a parent refuses to move her child from the private school in which the child is currently enrolled, the LEA does not have to create an IEP for that child.  What is formulated instead is a services plan for the child in the private school, describing the specific special education or related services offered.  This plan must be developed with a representative of the private school.  Such services may be provided on the premises of the private school or religious school. See 34 C.F.R. 300.133.

In support of its motion for summary judgment as to plaintiff's IDEA claim, defendant had argued, first, that it is not subject to liability under the IDEA because the Act provides only for liability of state and local educational agencies, and not private entities, so that any complaint plaintiff may have had

for alleged violation of the obligations imposed by the IDEA were properly directed against Jackson Public School District, the local educational agency (LEA). See J. v. School Dist. of Philadelphia, Civil Action No. 06-3866, 2007 WL 1221216, 2-4 (E.D. Pa. Apr. 25, 2007) (holding that "the local educational agency is the appropriate target of a suit under the IDEA," and that private entities cannot be held liable under the statute as the IDEA "obligates the 'State'-not the private school-to 'ensure' that such children 'are provided special education and related services, in accordance with an individualized education program'") (citations omitted). Defendant further argued that plaintiff is foreclosed from pursuing an IDEA claim against it because plaintiff failed to exhaust her administrative remedies, a mandatory prerequisite to a suit in district court under the IDEA. See 20 U.S.C. § 1415(f)(i). In her response to defendant's motion, plaintiff did not address defendant's arguments regarding their IDEA claim, and shortly after briefing on the motion was completed, plaintiff moved for, and was allowed to voluntarily dismiss the claim.

Defendant's exhaustion argument was not limited to plaintiff's IDEA claim; defendant also contended that plaintiff's failure to pursue her administrative remedy not only prohibited her IDEA claims in this court, but such failure was also fatal to her other statutory complaints, including her claim under the Rehabilitation Act. By its terms, the IDEA requires that any

claimant under § 504 of the Rehabilitation Act "seeking relief that is also available under" the IDEA must exhaust administrative remedies "to the same extent as would be required had the action been brought under this subchapter [i.e., the IDEA]."  20 U.S.C. § 1415(1) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.").  Thus, "when a plaintiff brings a claim under § 504 that is 'within the zone of interests' of IDEA, but has failed to request or attend an IDEA due process hearing, she is barred from § 504 relief by her failure to exhaust her administrative remedies."  Mr. I v. Maine School Administrative Dist. 55, 416 F. Supp. 2d 147, 174 (D. Me. 2006).  Defendant has thus argued that plaintiff's failure to exhaust her administrative remedies under the IDEA is fatal to her claim under the ADA and Rehabilitation Act.

Plaintiff's claim in this case seems to be that defendant discriminated against Arshad because of his disability by refusing to allow him to fully participate in its programs solely because

of his disability, autism.  This is a challenge to defendant's allegedly discriminatory actions, i.e., a "pure discrimination claim," for which the IDEA offers no relief.  Accordingly, plaintiff's failure to exhaust administrative remedies under IDEA does not bar their claim.  See <u>Ellenberg v. New Mexico Military Institute</u>, 478 F.3d 1262, 1279 (10th Cir. 2007) (recognizing that IDEA is simply not an anti-discrimination statute, so that pure discrimination claim was not barred by parents' failure to exhaust remedies under IDEA).

<u>Breach of Contract</u>

The gist of plaintiff's breach of contract claim appears to be that defendant, with full knowledge of Arshad's disability, promised and assured plaintiff it was equipped, trained and qualified to provide the educational services Arshad required, and promised to do all that was necessary to provide Arshad with an appropriate education for his disability.[6]  She contends that on the basis of defendant's promises and assurances, she made the decision to keep Arshad at defendant's school instead of accepting the free appropriate public education to which Arshad was entitled under the IDEA.  Defendant, however, failed to live up to its promise to plaintiff and ultimately admitted that it was not capable of providing the educational services it promised to

---

[6]     In fact, as the court understands plaintiff's complaint, she did not allege in substance that this defendant violated the IDEA, but rather claimed that this defendant caused her to forego Arshad's right under the IDEA to receive a free appropriate public education from the Jackson Public School District, the LEA.

provide Arshad.  Plaintiff claims that as a result of defendant's
breach of its promises/agreement, she lost the money she expended
toward tuition at defendant's school, for which she is entitled to
be compensated, and that she is also due compensation for Arshad's
having been deprived of the educational training appropriate and
necessary for his disability and of the opportunity for
educational growth.

Defendant has moved for summary judgment on plaintiff's
breach of contract claim, arguing that plaintiff is unable to
provide proof that a valid contract existed, or that there was a
breach of any kind, and that plaintiff has sustained no damages,
as there is no proof that Arshad's education suffered at all
during the time he was at Word of Faith.

Essentially, plaintiff argues in response that defendants
knew or should have known that Arshad was developmentally delayed
during his final two years at Word of Faith, and yet while
defendant gladly accepted plaintiff's tuition payments, it made no
changes to its curriculum to accommodate Arshad's disability, with
the result that Arshad did not achieve any of the educational or
developmental goals set for him, nor did he even make progress
toward meeting those goals.  However, plaintiff has presented no
proof that at any time prior to Arshad's diagnosis with autism,
anyone at Word of Faith ever made any promises or representations
to plaintiff concerning educational services that would be
provided Arshad above and beyond those provided all the students

in his class.  There is no proof of any promises that defendant
would alter its curriculum to address and meet Arshad's particular
needs.  Moreover, it is undisputed that during all this time,
Arshad was provided occupational and speech therapy at Word of
Faith Academy through the Jackson Public School District, the
local educational agency, and was provided additional therapy from
the Laskin Therapy Group.

Plaintiff further alleges that after Arshad was diagnosed
with autism in January 2006, defendant told her it would be able
to adequately care for Arshad, when in fact it was not equipped to
do this.  As proof in support of this allegation, plaintiff has
offered defendant's interrogatory response in which it stated that
Arshad was initially allowed to remain at Word of Faith Academy
after it learned of his autism diagnosis because defendant thought
it could adequately care for him; however, it subsequently
determined that it did not have the resources or capacity to care
for an autistic child.  Plaintiff has also offered her own
testimony that after Arshad's diagnosis with autism, the school's
director told her that Arshad was "our blessing," that she wanted
him to stay in the program, and that the school would provide a
teacher for Arshad who had experience working with children like
him.[7]

---

[7]     Contrary to plaintiff's version of events, defendant
denies it had knowledge in January 2006 of Arshad's autism
diagnosis and claims instead that as soon as it learned of the
diagnosis some months later, it contacted the Mississippi Private
School Association concerning the matter and was advised that it

From the foregoing, it appears the only promise or representation made to plaintiff was that the school would provide a teacher for Arshad who had experience working with children like him.  In fact, the school did provide a teacher for Arshad who had experience working with children "like Arshad."  And according to plaintiff's testimony, Arshad made great progress during the time she worked with him.  In plaintiff's words, this teacher, Ms. Watkins, was "like a miracle."  The problem arose, evidently, when Ms. Watkins left the school, which occurred sometime between the time of plaintiff's alleged conversation with the school's director in January 2006 concerning Arshad's autism diagnosis and the meeting on April 11, 2006 when plaintiff was told the school was not equipped to meet Arshad's needs and that he would not be allowed to re-enroll.

Viewing the evidence in the light most favorable to plaintiff, the court cannot conclude as a matter of law that plaintiff could not establish a claim for breach of contract. That is, accepting as true plaintiff's testimony that defendant promised it would hire/provide a teacher for Arshad so that he could remain enrolled at Word of Faith Academy, then arguably, it

---

was not equipped to care for Arshad, a fact which was promptly communicated to plaintiff.  Moreover, defendant claims that the teacher, Ms. Watkins, was not hired in response to plaintiff's having informed the school of Arshad's diagnosis with autism, but rather, had been hired months before, in the fall of 2005.  Given that defendant disputes plaintiff's version of the facts that support her claim, summary judgment cannot be entered for plaintiff on this claim.

was in breach of such alleged agreement for that limited period of time following Ms. Watkins's departure when defendant failed to provide an experienced teacher for Arshad.  Accordingly, the court will deny summary judgment on this claim.[8]

Plaintiff has also purported to allege state law claims for negligence, and for intentional and negligent infliction of emotional distress.  Although plaintiff's complaint fails to identify any duty that was allegedly breached, her response to defendant's motion for summary judgment recites that defendant "failed to exercise the degree of diligence and expertise the public expects of such a school."  In fact, however, the law imposes on the public school district, and hence not on this defendant, the specific duty to provide adequate educational services for disabled children.  Here, defendant has presented uncontroverted proof that it initiated contact with the Jackson Public School District to ensure that appropriate services were provided by JPS to Arshad, and that it fully cooperated with JPS and accommodated all of Arshad's therapy.  Plaintiff has no cognizable claim for negligence.

Plaintiff has alleged no facts that would support a claim for intentional infliction of emotional distress, which requires proof of outrageous conduct, see Brown v. Inter-City Federal Bank for

---

[8]     The court notes that in her response brief, plaintiff alludes to a claim for fraudulent misrepresentation by defendant. However, she has not pled this claim in her complaint, and cannot raise a new claim in response to defendant's summary judgment motion.

Savings, 738 So. 2d 262, 264-65 (Miss. Ct. App. 1999), leaving only a potential claim for negligent infliction of emotional distress.  Defendant has argued in its motion for summary judgment that plaintiff has failed to show that she suffered a physical injury.  See Randolph v. Lambert, 926 So. 2d 941 (Miss. Ct. App. 2006) (claim for negligent infliction of emotional distress requires that plaintiff prove "some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably forseeable to the defendant") (quoting American Bankers' Ins. Co. of Florida v. Wells, 819 So. 2d 1196, 1208 (Miss. 2001).  In response, plaintiff argues that as a result of defendant's actions, she became depressed and was prescribed depression medication.  This is insufficient to sustain her claim.  See id. (holding that plaintiff's proof that she became depressed and was prescribed depression medication by her family physician was insufficient to support claim, and stating, "[e]vidence that Randolph is very depressed and very upset is insufficient to sustain damages for mental anguish").

Conclusion

Based on the foregoing, it is ordered that plaintiff's motion for partial summary judgment is denied, and that defendant's motion for summary judgment is granted as to plaintiff's claim under the ADA, and her claims for negligence, and for negligent infliction of emotional distress.  It is ordered that defendant's motion is denied as to plaintiff's claims under the Rehabilitation Act and for breach of contract.

SO ORDERED this 19th day of November, 2008.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE